**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

**HENRY E. ARMSTRONG** | **CASE NO. 3:20-CV-00974**

**VERSUS** | **JUDGE TERRY A. DOUGHTY**

**SHERIFF'S OFFICE MOREHOUSE PARISH, ET AL.** | **MAG. JUDGE KAREN L. HAYES**

**REPORT AND RECOMMENDATION**

Before the undersigned magistrate judge, on reference from the District Court, are three pending motions: 1) a motion to dismiss for lack of subject matter jurisdiction, and for failure to state a claim upon which relief can be granted [doc. # 4] filed by defendants, the Morehouse Parish Sheriff's Office and Patrick Morrison; 2) a motion to dismiss for lack of subject matter jurisdiction, and/or for failure to state a claim upon which relief can be granted [doc. # 10] filed by defendants, the Morehouse Parish District Attorney's Office, ADA John Spires, and ADA Cynthia Lavespere; and 3) a motion to set aside [doc. # 14] defendants' motion to dismiss filed by plaintiff pro se Henry Armstrong. For reasons assigned below, it is recommended that the motions to dismiss be GRANTED-IN-PART and DENIED-IN-PART, and that plaintiff's motion to set side be DENIED.

**Background**

On July 29, 2020, Henry Armstrong, acting pro se, filed the instant suit for restitution of all assets seized from him on July 10, 11, and 13, 2017, by the Morehouse Parish Sheriff's Department, to wit:

a) Seized on July 10, 2017

- $691.00 from Henry Armstrong
- $85.75 from 1006 Hollins Ave.
- $6,665.00 from 1006 Hollins Ave.

b) Seized on July 11, 2017

- $19,022.10 from 1006 Hollins Ave.
- $45,000 from Kraft Federal Credit Union
- black sentry safe from 1006 Hollins Ave.
- 2001 Volkswagen Bug from 1006 Hollins Ave.
- 2002 Isuzu Rodeo from 1006 Hollins Ave.
- 1999 Chevrolet Cavalier from 1006 Hollins Ave.
- 2015 Toyota pickup from 1006 Hollins Ave.
- 2000 Toyota Pickup from Tisdale Ave.
- Generac 5000 generator from 1006 Hollins Ave.
- Polaris Sportsman 500 four-wheeler from 1006 Hollins Ave.
- Bad Boy pro-series mower from 1006 Hollins Ave.

c) Seized on July 13, 2017

- $17,645.90 from Kraft Federal Credit Union

(Compl.).

Armstrong alleged that the property was "seized and listed as forfeiture from an illegal search warrant based on erroneous information on how the property seized was obtained." *Id*. Plaintiff further alleged that the police "forced" the forfeiture of the property before he could show that he had properly obtained the property and that it was not related to the sale of any illegal drugs or drug activity. *Id*. Plaintiff further asserted that he believed that he was targeted as a "minority." *Id*.

Plaintiff named as defendants: the Morehouse Parish Sheriff's Office (also sometimes referred to in the complaint as the Morehouse Parish Sheriff's Department, hereinafter, "MPSO"); the North Louisiana Drug Enforcement Bureau (hereinafter, "NLDEB"); Detective Agent Patrick Morrison; the Morehouse Parish District Attorney's Office (the "MPDAO"); ADA John Spires; ADA Cynthia Lavespere; and Case No. 2017-297 of the Morehouse Parish Clerk of Court. *Id*. Plaintiff seeks a judgment declaring defendants' actions unconstitutional and ordering defendants to return all of his assets or the equivalent amount in restitution. *Id*.

On September 2, 2020, defendants, the MPSO and Patrick Morrison filed the instant

motion to dismiss for lack of subject matter jurisdiction pursuant to the *Rooker/Feldman* doctrine and for failure to state a claim upon which relief can be granted because 1) the MPSO is not a legal entity that is capable of being sued; 2) the *Parratt/Hudson* doctrine bars plaintiff's claims; and 3) plaintiff's claims are time-barred.

On September 23, 2020, defendants, the MPDAO, ADA John Spires, and ADA Cynthia Spires filed the instant motion to dismiss for lack of subject matter jurisdiction, or alternatively, for failure to state a claim upon which relief can be granted on the following grounds: 1) plaintiff's claims are time-barred; 2) the MPDAO is not a person capable of being sued under § 1983; 3) ADA Spires and ADA Lavespere enjoy absolute immunity for actions taken in their roles as prosecutors; 4) the *Parratt/Hudson* doctrine bars plaintiff's claims; and 5) the *Rooker/Feldman* doctrine precludes the exercise of subject matter jurisdiction in this case.

On September 23, 2020, plaintiff filed his opposition to the initial motion to dismiss and also asked the court to "set aside" the motion. [doc. # 9]. In his brief, plaintiff argued that individuals with the MPSO and the NLDEB could be sued. He further asserted that the *Rooker/Feldman* doctrine was inapplicable because he never got a chance to challenge the state court decision in state court. Plaintiff emphasized that his property had been seized, sold, and the profits disbursed to different agencies without proper notification to him of his deadlines to object to same. Plaintiff further asserted that the "Search" was conducted prior to the actual signing of the warrant on July 10, 2017. He also complained that some items that were returned to him on February 10, 2020, after his January 27, 2020, "release," had not been listed as items seized on July 10.

Plaintiff maintained that he had been deprived of his property without due process of law. He argued that the MPDAO violated his rights by conducting, managing, and filing a forfeiture action that resulted in the disbursement of his property, without a prior determination of the

legitimacy of the seizure. In other words, the MPDAO abdicated its duty to investigate whether it had any right to sell the property that was seized by the MPSO.

Plaintiff also attached excerpts from a July 10, 2017, search warrant and supporting affidavit that detailed the circumstances of his stop, arrest, consent to search his vehicle, including the detection of a marijuana odor and observation of marijuana in three plastic bags. [doc. #s 9-1 and 9-2]. The sworn search warrant application also noted that officers had observed three marijuana plants growing in the yard at 1006 Hollins Street. *Id*.

On October 1, 2020, plaintiff filed a motion to oppose and set aside [doc. # 14] the MPDAO's motion to dismiss. Plaintiff asserted that individuals with the MPDAO were not entities, and therefore, could be sued individually. Plaintiff further emphasized that the seizure, sale, and disbursement of the forfeiture only months after his arrest constituted a violation of his civil rights that was not random.

Plaintiff also clarified that he was seeking justice and relief under Louisiana Civil Code Article 2315 for the wrongful seizure and disbursement of his property. He again argued that *Rooker-Feldman* was inapplicable because he never got a chance to challenge the state court's decision. Plaintiff reiterated other arguments made in his opposition to the original motion and again attached a search warrant and supporting affidavit excerpts. [doc. #s 14-1 and 14-2].

On November 5, 2020, plaintiff filed an amendment and supplement to his responses to the pending motions to dismiss, wherein he endeavored, point-by-point, to distinguish *Wheeler v. Melsanson*, No. 08-0337, 2008 WL 2874718, at *1 (W.D. La. July 2, 2008), *R&R adopted*, (July 24, 2008 Judgment [doc. # 6]).

Briefing is closed; the matter is ripe.

**Discussion**

**I. Jurisdictional Issues**

Before addressing the merits of a case, federal courts are obliged to ensure that they enjoy subject matter jurisdiction to hear the matter. *See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430-431, 127 S.Ct. 1184, 1191 (2007); *Smith v. Texas Children's Hospital*, 172 F.3d 923, 925 (5th Cir. 1999) (courts must examine the basis for the exercise of federal subject matter jurisdiction). Lack of subject matter jurisdiction may be raised at any time. *Giles v. Nylcare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999). A court must raise the issue sua sponte if it discovers that it lacks subject matter jurisdiction. *Id.*

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "A court can find that subject matter jurisdiction is lacking based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Enable Mississippi River Transmission, L.L.C. v. Nadel & Gussman, L.L.C.*, 844 F.3d 495, 497 (5th Cir.2016) (citations and internal quotation marks omitted).

In this case, plaintiff specifically invoked the court's "supplemental jurisdiction" to consider his "claims arising under state law." (Compl., "Jurisdiction and Venue"). Before the court may exercise supplemental jurisdiction, however, it first must have "original jurisdiction." 28 U.S.C. § 1367(a). The two most common sources of original federal subject matter jurisdiction are diversity and federal question. 28 U.S.C. §§ 1332 & 1331, respectively. In the

case *sub judice*, the complaint does not contain requisite allegations to establish diversity jurisdiction, 28 U.S.C. § 1332.[1] To the contrary, it appears that plaintiff and the individual defendants are domiciled in Louisiana. Accordingly, requisite diversity of citizenship does not appear on the face of the complaint.

Furthermore, “federal-question jurisdiction is governed by the ‘well-pleaded complaint rule,’ which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.” *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 474, 118 S.Ct. 921, 925 (1998) (citations omitted). Section 1331 jurisdiction is properly invoked when plaintiff pleads a colorable claim “arising under” the Constitution or laws of the United States. *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 126 S.Ct. 1235 (2006). A district court should dismiss the case where “it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction.” *Venable v. Louisiana Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir.2013).

Here, plaintiff did not invoke any federal statute or specific constitutional provision in his complaint. However, in the concluding paragraph of his complaint, he asked the court to declare defendant’s acts “unconstitutional.” The court will construe this allegation as a request for vindication of rights under the U.S. Constitution, sufficient to support federal question jurisdiction.

Defendants raised another jurisdictional issue in their motions, which is whether plaintiff’s suit is barred by the *Rooker-Feldman* doctrine. Pursuant to the *Rooker–Feldman*

[1] For purposes of diversity, “[a]ll plaintiffs must be diverse in citizenship from all defendants . . .” and the parties’ citizenship must be “*distinctly* and *affirmatively* alleged.” *Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 139-140 (5th Cir. 1990); *Getty Oil, Div. Of Texaco v. Ins. Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citation omitted) (emphasis in citing source).

doctrine, "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Weaver v. Texas Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir.2011) (citation omitted). The doctrine comprises four elements: "(1) a state-court loser; (2) alleging harm caused by a state-court judgment; (3) that was rendered before the district court proceedings began; and (4) the federal suit requests review and reversal of the state-court judgment." *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 (5th Cir.2017) (citations omitted).

Nonetheless, the *Rooker-Feldman* doctrine is a "narrow jurisdictional bar" that is "designed to prevent lower federal courts from exercising jurisdiction over matters that are exclusively reserved for Supreme Court review under 28 U.S.C. § 1257." *Gross v. Dannatt*, 736 Fed. Appx. 493, 494 (5th Cir.2018) (citing *Lance v. Dennis*, 546 U.S. 459, 463; 126 S.Ct. 1198, 1201 (2006)). However, because the doctrine is tied to § 1257, which, in turn, is limited to "[f]inal judgments . . . rendered by the highest court of a State . . ." the doctrine applies only to "final judgment[s] rendered by a state's court of last resort." *See Burciaga, supra*.[2]

Here, defendants argue that plaintiff's suit seeks to collaterally attack a state court forfeiture proceeding. However, no judgment of forfeiture appears in the instant record. Furthermore, there are no facts to suggest that there was a final judgment rendered by the state court of last resort that plaintiff is seeking to overturn. Thus, by its terms, *Rooker-Feldman* is inapplicable.

## II. Merits-Related Issues

a) Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state

[2] In *Burciaga*, the Fifth Circuit acknowledged some "apparent tension" in its case law as to whether the state court judgment must be issued by a court of last resort in order for *Rooker-Feldman* to apply. *Burciaga*, 871 F.3d at 384, n.5 (citing *inter alia*, *Hale v. Harney*, 786 F.2d 688, 689–91 (5th Cir. 1986)). However, in *Gross v. Dannatt*, the Fifth Circuit distanced itself from *Hale* on the basis of intervening Supreme Court decisions. *Gross, supra*.

a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2). Circumstances constituting fraud or mistake, however, must be alleged with particularity. Fed.R.Civ.P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra*. (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827

(1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id*.

b) Section 1983 Considerations

As discussed above, plaintiff alleged that defendants transgressed unspecified constitutional rights. In one of his memoranda, he stated that his due process rights were violated. He also set forth facts that suggest an equal protection claim and an unlawful seizure claim. Nonetheless, plaintiff did not actually cite a federal statute to support his claims. Ordinarily, plaintiff must pursue constitutional claims through 42 U.S.C. § 1983. *Coleman v. Mississippi Dep't of Marine Res.*, 16-0289, 2016 WL 5794772, at *2 (S.D. Miss. Oct. 4, 2016) (citations omitted). Here, plaintiff did not invoke § 1983; thus, his constitutional claims are subject to dismissal on that basis alone. *Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir.1994); *Mitchell v. City of Houston, Tex.*, 57 Fed. Appx. 211 (5th Cir.2003).

However, even if plaintiff *had* invoked § 1983, his complaint still is subject to dismissal. Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. ' 1983). Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein. *Id*.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, *and* must show that the alleged

deprivation was committed by a person acting under color of state law." *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (emphasis added). Moreover, in order to plead a ' 1983 cause of action, a plaintiff "must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). Thus, a successful ' 1983 claim "must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged." *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

The court will address the viability of plaintiff's claims in the context of the arguments for dismissal raised by defendants.

c) Capacity to be Sued

Under Federal Rule of Civil Procedure 17(b), "capacity to sue or be sued shall be determined by the law of the state in which the district court is held," i.e., Louisiana. To enjoy the capacity to be sued under Louisiana law, an entity must qualify as a "juridical person." *Dejoie v. Medley*, 945 So.2d 968, 972 (La. App. 2d Cir.2006) (citations omitted). This term is defined by the Louisiana Civil Code as ". . . an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code Art. 24.

In Louisiana, the courts uniformly hold that sheriff's *offices* or sheriff's *departments* (as opposed to the sheriff him or herself) are not juridical entities capable of being sued. *See Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002) ("[A] sheriff's office is not a legal entity capable of being sued . . ."); *Sipes v. City of Monroe*, No. 11-1668, 2013 WL 1282457, at *3 (W.D. La. Mar. 28, 2013) (collecting cases). Moreover, as a multi-jurisdictional drug task force, defendant, the NLDEB, also is not a juridical entity capable of being sued. *Casson v. Powell*, No. 18-1429, 2019 WL 2166660, at *2 (W.D. La. Feb. 27, 2019), *R&R adopted*, 2019 WL 2134507 (W.D. La. May 15, 2019) (collecting cases).

Furthermore, insofar as plaintiff sued "Case No. 2017-297" as an additional defendant in this matter, it almost goes without saying that a "case" is not a juridical entity capable of being sued.

Because defendants, the MPSO, the NLDEB, and Case No. 2017-297, cannot be sued, they must be dismissed, with prejudice. *See Darby v. Pasadena Police Dept.*, 939 F.2d 311 (5th Cir. 1991) (affirming district court's dismissal of a defendant, with prejudice, because it could not be sued as an independent entity).[3]

Plaintiff also seeks relief from the Morehouse Parish District Attorney's Office. This entity, however, is not a "person" capable of being sued under Section 1983. *Delta Fuel Co., Inc. v. Maxwell*, 2011 WL 5159703, *aff'd*, 485 Fed. Appx. 685, 686 (5th Cir. 2012). Furthermore, Louisiana law does not permit a district attorney's office to be sued in its own name. Rather, the current[4] district attorney, in his or her official capacity, is the proper party. *Hudson v. City of New Orleans*, 174 F.3d 677, 680 (5th Cir. 1999). Accordingly, plaintiff's claims against the MPDAO are subject to dismissal.[5]

---

[3] The court possesses the inherent authority to dismiss a party sua sponte. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties); *Thomas v. Texas Dept. of Family and Protective Services*, 427 Fed. Appx. 309 (5th Cir. 2011) (sua sponte dismissal on 11th Amendment grounds). Also, where a defending party establishes that a plaintiff has no cause of action, this defense should inure to similarly situated defendants. *See Lewis v. Lynn*, 236 F.3d 766, 768, 236 F.3d 766 (5th Cir. 2001) (citations omitted).

[4] *See Thompson v. Connick*, 553 F.3d 836, 869, n.27 (5th Cir. 2008) (noting that a plaintiff should name the *current* district attorney), on reh'g en banc, 578 F.3d 293 (5th Cir. 2009), *rev'd on other grounds*, 563 U.S. 51 (2011).

[5] Even if plaintiff had named the current district attorney or the current assistant district attorneys in their official capacities, he still would not state a plausible claim. "For purposes of 'official capacity' suits under § 1983, the district attorney's office resembles other local government entities." *Burge v. Par. of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999). In that respect, "municipalities cannot be held liable for constitutional torts under § 1983 'on a *respondeat superior* theory,' but they can be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' " *Id.* (quoting *Monell v. Dep't of Soc. Servs.*

d) Timeliness

Defendants contend that insofar as plaintiff intended to bring a § 1983 claim, he did so too late. The court observes that there is no federal statute of limitations for actions brought pursuant to 42 U.S.C. § 1983. *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.1992). Therefore, § 1983 borrows the forum state's general personal injury limitations. *Mejia v. Unknown Officers*, 168 F.3d 485 (5th Cir.1999) (citing *Owens v. Okure*, 488 U.S. 235, 243-48 (1989)) (§ 1983).[6] In Louisiana, delictual actions are subject to a liberative prescription period of one year. La. Civ. Code Art. 3492. Thus, "[i]n Louisiana, the applicable section 1983 limitation is one year." *Mejia, supra* (citing *inter alia*, Louisiana Civ. Code Ann. art. 3492).

Although state law governs the limitations period and tolling exceptions, federal law determines when a cause of action arises. *Jackson, supra* (citation omitted). "A cause of action under § 1983 accrues when the aggrieved party knows, or has reason to know of, the injury or damages which form the basis of the action." *Ramon v. Rodriguez-Mendoza*, 372 Fed. Appx. 494 (5th Cir. April 1, 2010) (citing *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir.1995)). Thus, "if the plaintiff knows of the injury and the connection between the injury and the defendant's actions, or if the circumstances would lead a reasonable person to investigate the

---

*of City of New York*, 436 U.S. 658, 691 (1978) (internal citation omitted)).

Here, plaintiff's claim against the MPDAO appears to be premised on vicarious liability for the actions of the assistant district attorneys. Moreover, plaintiff did not allege facts to show: that this is the rare circumstance in which a final policymaker performed the specific act that violated his constitutional rights; that the presence (or absence) of a policy, pattern, practice, custom, or procedure violated, or caused a violation of, his constitutional rights; or that the need to take action to control the agents of the local governmental entity is so obvious that the final policymaker can reasonably be said to have been deliberately indifferent. *See Burge*, 187 F.3d at 471; *see also Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016).

[6] The courts must borrow the forum state's limitations period for personal injuries, including the state's provisions on tolling – so long as application of the rules does not undermine the goals of the federal statute at issue. *Jackson, supra* (citations omitted); *Hardin v. Straub*, 490 U.S. 536, 539, 109 S.Ct. 1998, 2000 (1989) (citation omitted).

matter further, then the cause of action has accrued." *Mejia, supra*.

Although limitations is an affirmative defense, a district court is authorized to dismiss a case (even *sua sponte*) when "it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations." *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir.2006) (citation omitted). Ordinarily, the party urging the statute of limitations defense bears the burden of proof. *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir.2002). However, once it is shown that more than one year has elapsed between the time of the challenged conduct and the filing of a law suit, "the burden shifts to the plaintiff to prove either suspension, interruption, or some exception to prescription, utilizing one of any number of legal constructs including but not limited to the doctrine of *contra non valentem* and the theory of continuing tort." *Id*. (citations omitted).

Here, plaintiff's claim for unlawful search and seizure accrued by July 2017 -- when he stated that all of the property at issue was seized. *See* Compl., Arts. of Fact, ¶ 1; *Curtis v. Childress*, No. 10-0976, 2010 WL 5648873, at *3 (W.D. La. Dec. 2, 2010), *R&R adopted*, 2011 WL 284452 (W.D. La. Jan. 25, 2011). Consequently, because the instant suit was not filed until more than two years later, his claim for unlawful search and seizure, whether under the Fourth Amendment or characterized as a substantive due process violation, is time-barred. Similarly, any unadvanced claim for race-based disparate treatment/discrimination related to his arrest, search, and seizure is untimely.[7]

---

[7] In any event, to support a claim under the Fourteenth Amendment's Equal Protection Clause, plaintiff must establish that he was treated differently from similarly situated individuals, and that the unequal treatment stemmed from discriminatory animus. *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (citation omitted). Plaintiff did not allege facts in his complaint to show that defendants treated similarly-situated individuals from another race more favorably than him. *Smith v. Kimbhal*, 421 F. App'x 377, 379 (5th Cir. 2011) (conclusory assertions of improper motive or retaliatory animus do not suffice to overcome a Rule 12(b)(6) dismissal); *Jabary v. City of Allen*, 547 Fed. Appx. 600 (5th Cir. 2013) (conclusory allegations that defendants undertook their activities because of plaintiff's membership in certain classes failed to state a

Having said that, the court is not persuaded that plaintiff's procedural due process claim stemming from the alleged forfeiture of his property is time-barred. There is nothing in the complaint to indicate when a judgment of forfeiture, if any, issued. Furthermore, plaintiff alleged that he never had an opportunity to challenge the forfeiture, and is not aware of what happened to his property.

e) *Parratt/Hudson*

Plaintiff's complaint suggests that defendants violated his right to procedural due process. However, a claim for random deprivation of personal property is not cognizable under § 1983. In *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.*, 451 U.S. at 536–37, 101 S.Ct. at 1913.

Furthermore, the Due Process Clause does not embrace tort law concepts. Although a litigant may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford such a remedy. *Daniels v. Williams*, 474 U.S. 327, 335, 106 S.Ct. 662, 667 (1986). Even in instances where intentional deprivation occurs, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated, so long as the deprivation was "random." *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir.1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir.1994). This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is

claim for relief).

unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128–32, 110 S.Ct. 975, 985–86 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

Accordingly, "[f]or the intentional deprivation of property to give rise to a due process violation, the deprivation must have been officially authorized and the plaintiff must challenge both the deprivation and the procedure under which it was authorized." *Brewer v. Hightower*, 628 F. App'x 303 (5th Cir. 2016). Moreover, a post-deprivation tort cause of action in state law is, under the *Parratt/Hudson* doctrine, sufficient to satisfy the requirements of due process when a plaintiff alleges that he has been deprived of his property, without due process of law, by the negligent or intentional actions of a state officer that are "random and unauthorized." *Sheppard v. Louisiana Bd. of Parole*, 873 F.2d 761, 763 (5th Cir. 1989) (quoting *Hudson*, 468 U.S. at 533-35).

Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property. *Copsey v. Swearingen*, 36 F.3d 1336, 1342-43 (5th Cir. 1994); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984) (citing Louisiana Civil Code Article 2315 and observing that "Louisiana law affords an opportunity to redress intentional torts under the same section of the Code by which negligence is remedied."); *Fuller v. XTO Energy, Inc.*, 989 So. 2d 298, 302 (La. Ct. App. 2008) (recognizing the tort of conversion).

Here, plaintiff did not allege that he was deprived of property by anyone acting under an official policy, custom, practice, procedure, or authorized act; rather, he described random and unauthorized action, which brings his case directly within the *Parratt/Hudson* rubric." While plaintiff contends that the search and seizure was planned and intentionally directed at him, he does not allege that the *deprivation of his property*—was pursuant to any official policy, custom,

practice, procedure, or authorized act. This omission distinguishes plaintiff's case from *Alexander v. Ieyoub*, 62 F.3d 709, 713 (5th Cir.1995), and brings it in alignment with *Wheeler, supra*.

Furthermore, state law, specifically, the Seizure and Controlled Dangerous Substances Property Forfeiture Act of 1989, Louisiana Revised Statute §§ 2601, *et seq.* (hereinafter, the "Forfeiture Act"), sets forth specific procedures that govern the seizure, adjudication, and sale of certain property. Moreover, the Forfeiture Act requires the district attorney to provide timely notice of his/her intent to forfeit property. La. R.S. § 2608.

Here, plaintiff indicated that he never received notice. If so, then the assistant district attorney potentially transgressed the Forfeiture Act. Furthermore, if the state court issued a judgment of forfeiture without providing plaintiff with proper notice, then plaintiff may file a petition of nullity of judgment in the state court. *See e.g., State v. 1330.00 in U.S. Currency*, 215 So.3d 211 (La. 2017) (holding that trial court should have entertained petition for nullity of judgment where the district attorney failed to provide defendant with proper notice of pending forfeiture). In other words, plaintiff has an adequate procedure to challenge the effect of any forfeiture judgment in state court, which also serves to preclude a federal denial of due process claim on the merits. *See Burciaga*, 871 F.3d at 390.

f) <u>Absolute Immunity</u>

Even if plaintiff's procedural due process claim was not barred by *Parratt/Hudson*, the assistant district attorney defendants are entitled to absolute prosecutorial immunity.

"Prosecutors are absolutely immune from § 1983 suits in their individual capacities for actions that are within the scope of their prosecutorial duties." *Quinn v. Roach*, 326 Fed. Appx. 280, *9 (5th Cir. May 4, 2009); *see also Kalina v. Fletcher*, 522 U.S. 118, 129, 118 S.Ct. 502 (1997); *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S.Ct. 984 (1976). Prosecutorial

immunity applies to a prosecutor's actions in initiating, investigating, and pursuing a criminal prosecution. *Id*. (citations omitted). "A prosecutor's absolute immunity will not be stripped because of action that was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Harrell v. Rosenthal*, 2008 WL 4649067 (5th Cir. Oct. 21, 2008) (unpubl.) (citation omitted).

For purposes of immunity, the presence or absence of jurisdiction is determined by whether the challenged activity falls within the category of conduct that a prosecutor generally engages. *Cousin v. Small*, 325 F.3d 627, 635-6 (5th Cir. 2003) (citation omitted). Thus, the inquiry becomes whether the challenged conduct occurred in the prosecutor's exercise of the advocatory function. *Id.*

Here, plaintiff suggests that ADA Spires and ADA Lavespere were involved in the proceedings that resulted in the forfeiture of his property. State law provides that the district attorney is charged with providing the owner or interest holder with a written assertion after seizure, serving the notice of pending forfeiture, filing the petition for forfeiture, filing a lien for forfeiture of the property, and applying for an order of forfeiture and allocation of the forfeited property. *See* La. R.S. §§ 40:2608(1)(a), (5)(a) & §2615A. The district attorney is also empowered to petition the court for a sale pending forfeiture under certain conditions, to make stipulations of exemption, and to apply for restraining orders or injunctions. *See* La. R.S. §§ 40:2608.1, § 2609 and §2611. Likewise, the district attorney is empowered to initiate in rem or in personam proceedings for forfeiture. *See* LSA-R.S. 40:2612 and §2613. Finally, the charges received from the sale of the forfeited property and the allocation of the net funds are governed by the express dictates of Louisiana Revised Statute § 40:2616.

In short, ADA Spires and ADA Lavespere were acting in their roles as advocates for the

state, and thus are absolutely immune from suit for money damages in federal court. *See Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir.2016) (prosecutor is absolutely immune for actions taken in her role as "advocate for the state" in the courts); *Wheeler, supra*.[8]

**III. Remaining State Law Claims**

When, as recommended here, all claims which conferred federal subject matter jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. ' 1367. In fact, this is the general rule. *Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004) (citation omitted). The undersigned further observes that interpretation and application of Louisiana's forfeiture provisions and various state law tort claims remain issues within the particular province and expertise of the state courts. Accordingly, the twin interests of comity and efficiency dictate that the state law claims be dismissed without prejudice. 28 U.S.C. ' 1367(c).

**Conclusion**

For the above-assigned reasons,

IT IS RECOMMENDED that defendants' motion to dismiss for lack of subject matter jurisdiction [doc. #s 4 & 10] be DENIED.

IT IS FURTHER RECOMMENDED that defendants' alternative motions to dismiss for

---

[8] In *Alexander v. Ieyoub*, the Fifth Circuit stated that it did not disagree that a "prosecutor must possess absolute immunity when initiating and presenting the state's case in a civil forfeiture action." *Alexander v. Ieyoub*, 997 F.2d 881 (5th Cir.1993). It further noted, however, that a prosecutor's "retention and management of property obtained under the forfeiture statues" was an administrative duty which was covered by no more than qualified immunity. *Id*.

In this case, plaintiff is not complaining about the ADAs' management and open-ended retention of his property. Rather, he is protesting that his property was forfeited and sold without requisite cause and notice. These acts and omissions tend to fall within the scope of the ADAs' role as "advocate for the state."

failure to state a claim upon which relief can be granted [doc. #s 4 & 10] be GRANTED, and that plaintiff's claims arising under the laws and Constitution of the United States be DISMISSED, with prejudice.

IT IS FURTHER RECOMMENDED that plaintiff's motion to set aside [doc. # 14] be DENIED.

IT IS FURTHER RECOMMENDED that plaintiff's remaining state law claims be DISMISSED, without prejudice. 28 U.S.C. § 1367(c).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 11th day of December 2020.

________________________________
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE